# IN THE COURT OF APPEALS OF IOWA

No. 22-0390
Filed September 27, 2023

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**KARI JEAN SCHWARTZ,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Buchanan County, John J. Bauercamper, Judge.

　　　　The defendant appeals her conviction and sentence for sexual exploitation by a school employee. **AFFIRMED.**

　　　　Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

　　　　Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

　　　　Heard by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

A jury convicted Kari Schwartz of sexual exploitation by a school employee, by pattern, practice, or scheme. *See* Iowa Code § 709.15(3)(a), (3)(b), (5)(a) (2009).[1] Schwartz appeals the judgment and sentence, arguing (1) there is insufficient evidence she engaged in a pattern, practice, or scheme to engage in sexual conduct with a student; (2) the district court erred in instructing the jury that hugging constituted sexual conduct; (3) the district court wrongly excluded evidence of the school's contemporaneous investigation that resulted in an "unfounded" finding; and (4) the district court violated her Sixth and Fourteenth Amendment rights when it applied Iowa Code section 907.3 (2022), which prevented the court from deferring judgment or imposing a suspended sentence, without specific jury findings that she was a mandatory reporter and the student

---

[1] Iowa Code section 709.15 criminalizes "sexual exploitation by a counselor, therapist, or school employee." In relevant part, it states:
> 3. Sexual exploitation by a school employee occurs when any of the following are found:
> a. A pattern or practice or scheme of conduct to engage in any of the conduct described in paragraph "b".
> b. Any sexual conduct with a student for the purpose of arousing or satisfying the sexual desires of the school employee or the student. Sexual conduct includes but is not limited to the following: kissing; touching of the clothed or unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals; or a sex act as defined in section 702.17.
> Sexual exploitation by a school employee does not include touching that is necessary in the performance of the school employee's duties while acting within the scope of employment.
> . . . .
> 5. a. A school employee who commits sexual exploitation in violation of subsection 3, paragraph "a", commits a class "D" felony.
> b. A school employee who commits sexual exploitation in violation of subsection 3, paragraph "b", commits an aggravated misdemeanor.

Iowa Code § 709.15.

was under eighteen years old at the time of the sexual exploitation. After our review, we affirm the conviction.

**I. Background Facts and Proceedings.**

In 2020, Schwartz was charged with engaging in a pattern, practice, or scheme of conduct to engage in sexual conduct with A.S., who was a student of Schwartz's at Independence High School when the crime was alleged to have occurred in 2009. Schwartz pled not guilty.

In the lead up to the jury trial, the State filed a motion in limine, asking the court to exclude "evidence that a past investigation by the Independence High School and the Iowa Board of Education determined that the conduct was 'unfounded.'" At a hearing on the motion, the State argued the conclusion of the prior investigation was irrelevant and invaded the province of the jury. Schwartz argued she should be allowed to inform the jury about the "unfounded" conclusion of the 2009 investigation. Alternatively, she argued,

> So if the court decides that we can't say it was founded or unfounded, I still want to be able to at least talk about that there was an investigation that was completed that it was looked into, these are the things, you know, that were done to do the investigation, this is what was reported.

In response, the State conceded that "[Schwartz] can talk about an investigation happening, and that's fair" but continued to object to evidence about "the results and particularities of that investigation." The court granted the State's motion, initially ruling there was to be no mention of the investigation at all. Almost immediately, the court adjusted its ruling stating "the principal can testify as to there was an investigation but not whether or not action was or was not taken by the school board or the State Board of Education."

At trial, A.S. testified she began taking an art class with Schwartz on or around August 24, 2009. Schwartz spent extra class time talking to both A.S.'s four-top table and to A.S. specifically. During some of these chats, Schwartz shared personal details about her life, including intimate details like the fact she walked in on her romantic partner with another person. Schwartz's sharing of these stories made A.S. feel trusted and like she was being treated as an adult by her teacher. And in return, Schwartz encouraged A.S. to share details of her personal life, including the difficulty she was experiencing due to her mother's cancer diagnosis and treatment. Schwartz told A.S. she was "beautiful" and "pretty" and made positive comments about A.S.'s body strength.

A.S. remembered that Schwartz was "a very physical person" who "wanted a hug or she had to touch [her] in some way." And when Schwartz hugged her, "It was, like, a full-on chest-to-chest type hug. Like, . . . a bear hug, like, full body, full strength, like, very intimate and close." Two social media posts from September 18 were introduced into evidence: one of a picture showing Schwartz sitting across the lap of A.S. and another student in a classroom and the second of a post Schwartz made that was directed at A.S., stating, "You are such a pretty girl, absolutely love your senior pictures! have a blast at homecoming!" Then in late September, Schwartz invited herself to A.S.'s pumpkin farm when A.S. invited her classmates to come over that weekend. While sitting within a few feet of A.S. at the farm on that Sunday, Schwartz sent a text message to A.S. that said, "Love ya." A photograph of A.S. and Schwartz taken that same day shows them in a "chest-on-chest" hug. The next day, Schwartz sent A.S. an email during the school day; the email said, in part:

Dear [A.S.],

Sweetie [A.S.], I wish i could fix all your hurts. If only it were so easy as to kiss it and say its all better. Hurt, I would do a lot of things to prevent someone from feeling it, and for you I would do anything. . . . You have no idea how proud I am to know you. You are making a difference in peoples lives [A.S.]. You impact me . . . ok . . . now you got me crying. Have you ever just come across someone that once you get in this 3 foot radius they just tug at your heart strings? So I am probably not suppose to love my students, but I do you. I can't fix what you are going through but I am here for you anytime day or night. If you have a bad night call me I can come get you we can do something, or we can just talk, or we can just say nothing at all and I will just be by your side. By the way, you give the best hugs ever, like you mean it. Or maybe its just your pipes being so strong!

So what's your story?

A.S. responded by email later the same night, and Schwartz sent another one at

4:17 a.m. on Tuesday morning.

Sweetest [A.S.],

There is no place i would rather be then here for you. You inspire me as well. My life story. . . it is a long one. some days I feel like it is a soap opera but it has helped make me who I am today and somehow I got to meet you and its the people like that in my life, that make everything worth while. It's interesting to me how much we have in common, my high school days looked a lot like yours. Volley ball, tennis, band, rollerblading, working out on the farm, stud[y]ing, not letting others see past the smile. How does that happen? I had a lot of really great friends in high school too but it was always my teachers I could talk to because no one else really understood me or why priorities are what they are. I am not sure I should have told you and the other girls what I did about me especially since no one in independence, or even in iowa really knows a lot about me or my past. . . . You, [A.S], have a heart of gold. I hold your trust very high and I will never intentionally hurt you. I have picked up on you have a lot going on in your heart and i am here for you. Plus, sometimes i think i get the better end of the deal cause I get one of your hugs. :) So if I get to attached make sure you say something. . . . Love ya!

After school that night, Schwartz sent a text message to A.S. that said, "I know I

luv u n u r worth the world. U have no idea!"

A.S. printed out Schwartz's emails and showed them to another teacher, Rachel Hurley, on Tuesday morning. Hurley told A.S. she would take them to the principal (and Hurley did so). A.S. proceeded to go to Schwartz's class as usual but she was quiet and withdrawn. When class ended, Schwartz shepherded A.S. into a stairwell to talk about what was bothering her. A.S. sat down on the top step and Schwartz sat down behind her and—according to A.S.—"straddled around [her] with [Schwartz's] legs wrapped around either side of [her] and took [her] in . . .kind of a bear hug." Schwartz wrapped one arm around A.S.'s face and then, with her other arm near her hip, her hand "went up above [A.S.'s] clothes to [her] chest and then . . .down to [her] pants line. And she went below [A.S.'s] clothing towards [her] pubic area . . . .  [K]ind of, like, above the clitoris area." When two students started walking up the steps, Schwartz got up to speak to them and A.S. left.

Schwartz sent A.S. one more email Tuesday—after A.S.'s class ended. It said, "quiet girl today. I do want to hear what happened last night if you want to share. I am here in person, no kids 4th or written works to[o]. So what do you believe?"

A.S. and Schwartz did not have any further interaction; once the principal learned of the communications sent by Schwartz, an investigation was launched. Schwartz left her employment with the school early on in the investigation process. A.S. told the principal about the emails and text messages sent by Schwartz when she was asked during the investigation, but she did not share any information about the stairwell or any inappropriate touching. It was not until 2020, when she first made a report to the police.

Schwartz testified in her own defense. She admitted sending the emails, and she also admitted sending text messages although she gave different context or suggested the messages introduced were not complete.[2] Schwartz denied having a closer relationship with A.S. than she did with her other students; she explained the emails and text messages as trying to support and "build up" a student she noticed was going through a hard time. Schwartz recognized parts of the emails and texts sounded bad "out of context." Schwartz admitted to hugging A.S. a few times but testified it was usually a side hug. And she agreed she spoke to A.S. in the stairwell after class on Tuesday, September 29, but she testified she sat on the stair next to A.S., only put her arm around her in a side hug, and did not touch A.S.'s chest or underneath her pants.

The jury found Schwartz guilty of sexual exploitation by a school employee, by pattern, practice, or scheme.

In a post-trial motion, Schwartz raised the issue of whether the court could apply section 907.3 without findings by the jury that, at the time of the crime, she was a mandatory reporter and A.S. was under the age of eighteen. The State resisted, arguing section 907.3 does not create or increase a mandatory minimum, so the jury was not required to make any findings before the district court applied the statute.

---

[2] The text messages themselves were not entered into evidence; A.S.'s phone was stolen by a student who blamed A.S. for Schwartz leaving. But during the school's investigation of Schwartz, the contents—or at least partial contents—of four of the text messages Schwartz sent A.S. were typed out on a word processing document, which was saved. This document was entered into evidence as an exhibit.

The district court denied Schwartz's motion. In sentencing her to a five-year term of imprisonment and a special ten-year sentence, the court stated:

> This offense is a crime that's specified and explained and adopted by the Iowa legislature. This particular offense carries what's called a mandatory sentence which means the trial court and the judge like me has no choice if a person is found guilty by a jury. There is a mandatory prison sentence in this case. There is no lenient option to this sentence under the law as I understand it though there is some dispute between the lawyers to this case. Therefore, those mandatory requirements as I understand them adopted by the Iowa legislature are required to be followed by me, and I will do that.
> . . . .
> It is the judgment of the court that you Kari Jean Schwartz are guilty of the crime of sexual exploitation by a school employee in violation of sections 709.15(1), 709.15(3)(a), 709.15(5)(a), 907.3 and 903B.7(b)(2) of the Iowa criminal code as applicable for the purposes of sentencing.

Schwartz appeals.

## II. Discussion.

### A. Sufficiency of the Evidence.

Schwartz challenges the sufficiency of the evidence supporting her conviction. "In determining whether there was substantial evidence, we view the evidence in the light most favorable to the State." *State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997). "Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining if there was substantial evidence, we consider all of the evidence in the record, not just the evidence supporting a finding of guilt." *Id.*

Here, the State had to prove all of the following:

> 1. On or about August 21, 2009 through October 5, 2009, the defendant, Kari Jean Schwartz, engaged in sexual conduct with [A.S.]
> 2. The defendant, Kari Jean Schwartz, engaged in this conduct as part of a pattern or practice or scheme of conduct.

3. The defendant did so with the specific intent to arouse or satisfy the sexual desires of Kari Jean Schwartz or [A.S.]
4. The defendant, Kari Jean Schwartz, was then a school employee.
5. [A.S.] was then a student.

Schwartz focuses on the second element, arguing the State did not introduce substantial evidence she employed "a pattern or practice or scheme of conduct" to engage in sexual conduct with A.S. As she recognizes, "pattern or practice or scheme of conduct" is not defined in the statute. And we have little case law that addresses the definition or parameters of the term.

In *State v. Wickes*, 910 N.W.2d 554, 558 (Iowa 2018), the defendant-teacher challenged the sufficiency of the evidence establishing that he engaged in a pattern, practice, or scheme of conduct to engage in sexual conduct with a student. In deciding the issue, our supreme court said:

> [T]he language [of the statute] is clear that scheming to engage in "any sexual conduct with a student," even if it is only one student over a forty-five-day period like [the teacher] did in this case, constitutes a "pattern or practice or scheme of conduct" criminalized in Iowa Code section 709.15(3)(*a*)(1). This interpretation is further supported by the *Black's Law Dictionary* definition of "scheme," which is "[a] systemic plan; a connected or orderly arrangement, esp[ecially] of related concepts", or "[a]n artful plot or plan, usu[ally] to deceive others." Nothing in this definition, or the language of Iowa Code section 709.15(3)(a), requires the scheme to involve multiple students or take place over a certain period of time. Consequently, we must enforce the statute as written instead of reading a definition into the law that is not evident from the statute's language.

*Wickes*, 910 N.W.2d at 569 (internal citations omitted). Focusing on the specific evidence presented at trial—"includ[ing] dozens of hugs, thousands of messages [the teacher] exchanged with [the student], the contents of the messages, and the photographs"—the court concluded there was substantial evidence the teacher

engaged in a pattern, practice, or scheme to engage in sexual conduct with the student. *Id.* at 570.

Schwartz contrasts the facts of her case with those of the teacher in *Wickes*. She notes that the teacher in *Wickes* sent thousands of messages to the student, which included statements about the teacher's sexual frustrations with his spouse, how sexually attractive he found the student, and his desire to show physical affection and to be in a romantic relationship with the student. *Id.* at 560. While here, the evidence showed Schwartz and A.S. exchanged only a handful of messages over a period of less than a week and the messages did not contain anything overtly sexual.

The facts in *Wickes* are, without question, more extreme than what the State introduced here. But nothing in our supreme court's ruling convinces us that anything less than those facts is insufficient to establish a "pattern, practice, or scheme." A.S. described Schwartz's conduct over a period of about five weeks—from the start of school on August 24 until their last interaction on September 29. During that time, Schwartz went from spending extra time at A.S.'s table during class to inviting herself to A.S.'s pumpkin farm and sending A.S. text messages and emails outside of school hours. Also, Schwartz shared personal details about her life and encouraged A.S. to do the same. Schwartz told A.S. they had a lot in common and suggested A.S. should talk to her because—unlike her peers—Schwartz understood her. While her statements were not overtly sexual, Schwartz commented on A.S.'s body and appearance, telling A.S. she was beautiful and pretty and remarking on her strength. Plus, Schwartz told A.S. that she loved her multiple times and also encouraged A.S. to meet her outside of school hours—

telling A.S. she would be there for her "anytime day or night" and that she would "come get [her so] we can do something, or we can just talk, or we can just say nothing at all and I will just be by your side."

Like in *Wickes*, Schwartz "continued to encourage A.S. to rely on [her] for support in the form of conversations and hugging." 910 N.W.2d at 560. And, also like with the teacher in *Wickes*, we discern a progression in Schwartz's actions toward A.S., as she gained A.S.'s trust and began to share more inappropriate statements of love and seeking a relationship. This constitutes substantial evidence Schwartz engaged in a pattern, practice, or scheme to engage in sexual conduct with A.S.

**B. Jury Instructions.**

Schwartz challenges a jury instruction that was given over her objection. We review for correction of errors at law. *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). "Erroneous jury instructions warrant 'reversal when prejudice results.'" *Id.* (citation omitted). "Prejudice results when jury instructions mislead the jury or materially misstate the law." *Id.* at 241–42.

Here, the court proposed to give the jurors instruction number 16 as follows: "'Sexual conduct' includes, but is not limited to kissing, hugging, touching of the clothed or unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals, or a 'sex act.'" Schwartz objected, arguing "hugging" should be removed from the instruction because it is not included in the list of per se sexual conduct found in the statute. *See* Iowa Code § 709.15(3)(b) (2009) (providing "sexual conduct includes but is not limited to the following: kissing; touching of the clothed or unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals; or a sex act

as defined in section 702.17"). In response, the State argued that the statute expressly stated sexual conduct was not limited to those actions in the list, so the court was not wrong to add hugging to the definition "in this particular case." The State also pointed to *Wickes* and correctly noted the supreme court held that—based on context and the circumstances surrounding them—hugs can constitute sexual conduct under the statute. 910 N.W.2d at 566–67.

Our supreme court has adopted a "broad approach to the meaning of 'sexual conduct' under Iowa Code section 709.15(3)(a)." *Id.* at 565. Even conduct not expressly included in the statute *can be* sexual conduct under the statute if, "in light of all of the circumstances . . . the conduct at issue was sexual and done for the purpose of arousing or satisfying the sexual desires of the [teacher] or the [student]." *Id.* at 565–66 (second and third alterations in original) (citation omitted). We share our supreme court's reservation when characterizing a hug as sexual conduct and reiterate that "nothing should prohibit teachers from hugging students for reassurance, comfort, or in congratulation without putting themselves at risk of being charged with the crime of sexual exploitation." *Id.* at 566. But as was developed in *Wickes*,[3] hugs alone can constitute sexual conduct when evidence of the context and circumstances surrounding the contact show the hugs were for the purpose of sexual gratification. *Id.* at 568 (declining "to narrow the scope of Iowa Code section [709.15(3)] by finding that hugs alone cannot amount to sexual conduct"). Allowing for a broad interpretation of "sexual conduct" serves the legislative concern for the welfare of children and recognizes the potential for

---

[3] Because *Wickes* was a trial to the bench, we do not have the benefit of jury instructions used in that case.

inappropriate conduct between a student and a school employee in our ever-changing technological world. *Id.* at 567–68. Yet, we caution that inclusion of "hugging" in the definition of sexual conduct without the requisite proof of context and underlying circumstances risks offending the reservation mentioned above over appropriate school staff behavior.[4] Because the State presented evidence of the context and surrounding circumstances involving the hugs in this case, the

---

[4] The model jury instruction allows for the inclusion of sexual conduct other than that specifically listed in section 709.15(3)(b), while the comments to the instruction highlight the need for the inclusion of any other specified conduct to be supported by the evidence presented to the jury.

> Iowa Criminal Jury Instructions 920.9 states:
>> The State must prove all of the following elements of Pattern, Practice, Or Scheme Of Sexual Exploitation by a School Employee:
>> 1. On or about the _____ day of _____, 20___, the defendant:
>> a. Kissed (victim); or
>> b. Touched the clothed or unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals of (victim); or
>> c. Performed a sex act with (victim); or
>> d. Engaged in [specify sexual conduct] with (victim).*
>> 2. The defendant engaged in this conduct as part of a pattern or practice or scheme of conduct.
>> 3. The defendant did so with the specific intent to arouse or satisfy the sexual desires of the defendant or (victim).
>> 4. The defendant was then a school employee.
>> 5. (Victim) was then a student.
>> 6. The defendant's conduct was not necessary in the performance of the school employee's duties while acting within the scope of employment.**
>
>> If the State has proved all of the elements, the defendant is guilty of Pattern, Practice, Or Scheme Of Sexual Exploitation by a School Employee. If the State has failed to prove any one of the elements, the defendant is not guilty of Pattern, Practice Or Scheme Of Sexual Exploitation by a School Employee, and you will then consider the crime of Sexual Exploitation by a School Employee explained in Instruction No. _____.
>> . . . .
> Note: *Use only specifications supported by the evidence.

broad interpretation of "sexual conduct" supported addition of the language "hugging" as possible sexual conduct.

But Schwartz urges that instruction 16 characterized "hugging" as *per se* sexual conduct without reference to context or circumstances. Here, both Schwartz and A.S. testified that the two hugged on multiple occasions. But their testimony about the context surrounding the hugs and the type of hug—a quick side hug or a long, chest-to-chest hold—was at odds. At first glance, it seems that instructing the jury that these hugs were "sexual conduct," regardless whether it credited A.S.'s or Schwartz's testimony about them, would be prejudicial to Schwartz. *See Wickes*, 910 N.W.2d at 566 (suggesting a hug from a teacher "trying to comfort and reassure a struggling student" would not be sexual conduct). Even so, under the marshalling instruction (instruction number 14), the jury was still required to determine that Schwartz hugged A.S. "with the specific intent to arouse or satisfy the sexual desires" or herself or A.S. before it could convict based on that conduct.[5] *See State v. Ross*, 986 N.W.2d 581, 585 (Iowa 2023) (recognizing we consider jury instructions "as a whole to determine their accuracy" and noting improper instructions "can be cured if the other instructions properly advise the jury as to the legal principles involved" (altered for readability)). Both the State and Schwartz understood this interplay between instruction number 16 and the marshalling instruction, as each highlighted it for the jury in their respective

---

[5] The jury may have found Schwartz guilty based on sexual conduct with A.S. in the stairwell rather than any hugging that took place.

closing argument.[6]  And if the jury concluded Schwartz hugged A.S. with the specific intent to arouse or satisfy the sexual desires of either A.S. or Schwartz, then the hugging was sexual conduct.  *See Wickes*, 910 N.W.2d at 565.  Because the instructions, when read as a whole, required the jury to make the appropriate findings and hugging can be sexual contact with a proper showing, we find no prejudicial error.  *See State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010) (providing we only reverse a conviction based on a jury-instruction error if the giving of the particular instruction "was prejudicial to the complaining party").

### C. Exclusion of Evidence.

Schwartz challenges the district court's ruling that she could not present evidence that the school's 2009 investigation resulted in an "unfounded" finding.  The State argues Schwartz failed to preserve error on this issue, noting that while the evidentiary issue was raised to the district court in a motion in limine and was ruled upon, Schwartz never made an offer of proof.

---

[6] During its closing argument, the State urged the jury to find "[t]he nature of the hugging in this particular case was a sexually-motivated hug," while Schwartz argued:

> So when we talk about the sexual conduct, Instruction Number 16, I want you to think about that in context with Number 14, because that sexual conduct is a definition.  And in Number 14, it talks about that there must be specific intent to satisfy the sexual desires of Ms. Schwartz or [A.S.]  So those two things have to be read in concert with each other.  So the question for you is are all hugs sexual conduct?  Because that instruction says, including, but not limited to, and then a list of items, and hugs is on there, but we would argue no.  I mean, look at the context and the intent.  And so you're going to have to look at the specific intent on the next line in Number 14.  Does the hug arouse the sexual desires of either of the individuals?  Does that make sense?  No.

Generally, "an offer of proof is necessary to preserve error in the exclusion of evidence." *In re Marriage of Daniels*, 568 N.W.2d 51, 55 n.2 (Iowa Ct. App. 1997). It "provides a record because the reviewing court cannot predicate error upon speculation as to what testimony would have come in the record had the objection not been sustained. The burden of making an offer of proof . . . is on the party that urges the evidence should have been admitted." *Strong v. Rothamel*, 523 N.W.2d 597, 599 (Iowa Ct. App. 1994) (internal citation omitted). However, an offer of proof is not necessary to preserve error if the record "makes apparent what is sought to be proven." *State v. Lange*, 531 N.W.2d 108, 114 (Iowa 1995).

Here, Schwartz argues the substance of the evidence is apparent from the context and emphasizes that the State, in its motion in limine, first addressed the "past investigation by the Independence High School and the Iowa Board of Education" that determined that the conduct was "'unfounded.'" Schwartz only wanted in what the State wanted out. And Schwartz urges that the State presented evidence of an investigation at the time she left employment at the school, so it is only fair to allow her to show nothing came of it.[7] But, we cannot say it is clear from the record what evidence Schwartz wanted to introduce. Nor is it clear what the evidence would have been since the principal had a different conclusion about the investigation. At the hearing on the motion in limine, they argued:

> PROSECUTOR: I think the one that we want this court to adjudicate will be the evidence that report of abuse was unfounded. . . .

---

[7] The State contends nothing from the court's limine ruling or anything else prohibited Schwartz "from offering evidence about when, how or why she left her teaching position at Independence," and Schwartz did testify she continued teaching until 2021 even after leaving the district.

> THE COURT: So the only thing I need to rule on right now for purposes of opening statement and the first witness is Item 7; is that right?
>
> DEFENSE COUNSEL: Yes. But I also understand the State to be saying that they don't want me to talk at all about the prior investigation.
>
> THE COURT: By the school and DHS?
>
> DEFENSE COUNSEL: Just by the—The only investigation there was was by the school, and both of them—
>
> THE COURT: Okay.
>
> DEFENSE COUNSEL: Both of them were unfounded. The principal that did the investigation will say she believed it should have been founded although it was unfounded.
>
> PROSECUTOR: I think her report writes that it was founded.
>
> DEFENSE COUNSEL: She put in the report that she believed it should be founded but it was unfounded. It was taken to the next level by the superintend[e]nt.
>
> THE COURT: Okay. Go ahead and make your argument.
>
> DEFENSE COUNSEL: So under—so the State's witness, Sornson, stated in the deposition she believed it should have been founded, however, the licensing board determined no sanctions were necessary.

We generally understand that Schwartz sought to introduce a conclusion from a 2009 investigation, but who performed that investigation and what those findings actually were (and what they meant) is not clear to us. Without more, "we can do no more than speculate about the substance of [the] proposed testimony." *State v. Lacey*, 968 N.W.2d 792, 806 (Iowa 2021). Finally, later in the motion in limine record, Schwartz implied she should be allowed "to explore the school investigation because [she thought it was] relevant to talk about with the witnesses what was investigated at the time of the alleged incident" and "believe[d] [it was] important to give context to be able to say [A.S.] had prior inconsistent statements even in that . . . proceeding." And after noting the prior statements could be brought up on cross-examination of the witnesses, the district court did green light that opportunity for Schwartz. But, as to the findings of the investigation, error was

not preserved, and we do not consider Schwartz's evidentiary challenge further. *See id.*

### D. Application of Iowa Code section 907.3.

Iowa Code section 907.3 (2022) allows the court to defer judgment or suspend a term of incarceration and place the defendant on probation, but it "does not apply . . . . to a violation of chapter 709 committed by a person who is a mandatory reporter of child abuse under section 232.69 in which the victim is a person who is under the age of eighteen." Here, Schwartz argues the district court's refusal to consider giving her a deferred judgment or suspended sentence violated her Sixth Amendment rights because the jury was not asked to and did not find that she was a mandatory reporter and A.S. was under the age of eighteen at the time of the crime. She asks us to vacate her sentence and, on remand, require the district court to consider giving her a deferred judgment or suspended sentence. We review constitutional issues de novo. *State v. Davison*, 973 N.W.2d 276, 280 (Iowa 2022).

Schwartz relies on *Alleyne v. United States*, 570 U.S. 99, 103 (2013), which holds that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." But Schwartz's sentence was not increased based on a fact not found by the jury. It seemed to be undisputed—from the evidence presented at trial in front of the jury—both that A.S. was seventeen in the fall 2009 and that Schwartz, as a

licensed teacher in the State of Iowa, was a mandatory reporter.[8] The sentences she received—a term of incarceration not to exceed five years plus a ten-year special sentence—were authorized by the jury's determination that Schwartz committed sexual exploitation by a school employee, by pattern, practice, or scheme. *See* Iowa Code §§ 902.9(1)(e) (providing a person convicted of a class "D" felony "shall be confined for no more than five years"); 903B.2 (allowing a special sentence for a period of ten years for a person convicted of a class "D" felony under chapter 709). Put another way, Schwartz's constitutional rights were not violated because the sentence she received is not a "punishment that the jury's verdict alone does not allow." *Davison*, 973 N.W.2d at 287.

**III. Conclusion.**

Substantial evidence supports the jury's finding Schwartz engaged in a pattern, practice, or scheme to engage in sexual conduct with A.S. Although the jury was wrongly instructed that hugging is sexual conduct per se, when taken as a whole, the jury instructions required the jury to make the appropriate findings to determine Schwartz's guilt. We do not reach the merits of Schwartz's claim the district court wrongly excluded evidence of the finding of a 2009 investigation. And Schwartz's constitutional rights were not violated when the district court concluded it was prevented from deferring judgment or suspending Schwartz's sentence. For all of these reasons, we affirm.

**AFFIRMED.**

---

[8] A.S. testified her birth year was 1992. And Schwartz herself introduced evidence that she was a licensed teacher in the fall of 2009 and that all licensed teachers in the State of Iowa were mandatory reporters.